ANN M. SEARLES ET AL. v. FRANKLIN J. KELLEY ET AL.

[40 South. Rep., 484.]

1. MORTGAGES.   *Appointment   of   trustee.   Original   and   substituted
   trustee.*   Laws 1896, ch. 96, p. 105.

   The appointment of an original trustee, under a power in a mort-
   gage, to sell property for the payment of the mortgage debt is
   not the appointment of a substitute trustee, within the meaning
   of Laws 1896, ch. 96, p. 105, requiring the appointment of sub-
   stituted trustees to be in writing and duly placed of record before
   the sale.

2. SAME.   *Foreclosure.   Who may purchase.*

   Where the owner executed three mortgages upon his land and then
   sold the equity of redemption, and the third mortgage was fore-
   closed, the vendee of the equity of redemption purchasing there-
   under, he can acquire title, at a sale duly advertised and made,
   under the first mortgage as against the second mortgagee,
   although the latter had no actual notice of the sale.

FROM the chancery court of Claiborne county.

HON. WILLIAM P. S. VENTRESS, Chancellor.

Kelley and others, partners under the trade name of Kelley,
Simmons & Co., the appellees, were the complainants in the
court below; Mrs. Searles and others, the appellants, were
defendants there.   From a decree in complainants' favor, over-
ruling a demurrer to the bill of complaint, defendants appealed
to the supreme court.   The opinion fully states the case.

*Bryson & Dabney,* for appellants.

The mere allegation of fraud and the imputing of fraudulent
motives to acts which are otherwise perfectly lawful, do not fur-
nish sufficient grounds upon which to maintain an action.   None
of appellants did any act which was not perfectly legal, proper

and regular, and the empty charge of fraud is no excuse for setting any of them aside.    *Weir* v. *Jones,* 84 Miss., 610 (s.c., 36 South. Rep., 533).

Ann M. Searles had the right to improve her title in every legitimate way, and it was proper for her to procure this sale and bid in the property, and her former possession did not curtail that right.

In *Green* v. *Collins,* 38 South. Rep., 188, a third sale under a deed of trust was sustained, although the party had been in possession for several years under two former sales that were alleged to be void.

As to the failure of the trustee to record his appointment, we contend that all of our recording laws are purely statutory, and there is no statute covering this case prior to the act of 1896 (p. 105) requiring the record of the appointment of substituted trustees; sale by substituted trustees were perfectly valid where their appointments were not recorded.

In this case there was no substitution of a trustee.    Dabney was the first, last and only trustee appointed under the terms of the instrument and the filing of his appointment for record was entirely unnecessary.    The mortgage or trust deed was on record and gave notice to the world that any legal owner of the notes secured by it could at any time after default appoint a trustee to foreclose it.    Under the terms of the instrument such appointment did not have to be recorded, or even be in writing.

The fact that appellees had no notice of the assignment of the Guthrie notes to T. M. Searles furnishes no ground of complaint, for what right had they to such notice?    Searles could only exercise such powers and rights as already existed in his assignor, of which appellees had ample notice by the record of the mortgage.

In the case of *Barkwell* v. *Swan,* 69 Miss., 907 (s.c., 13 South. Rep., 809), this court has gone so far as to hold that where a deed to lands is recorded, a contemporaneous writing

showing it to be in reality a mortgage is perfectly valid although unrecorded.

*E. S., J. T. & H. W. M. Drake,* for appellees.

A purchaser at a sale under a power will be held to the strictest good faith and diligence. The sale must be characterized by fairness, good faith and impartiality. *Dunton* v. *Sharpe,* 70 Miss., 864 (s.c., 12 South. Rep., 800) ; *Weir* v. *Jones,* 84 Miss., 602 (s.c., 37 South. Rep., 128). The decision of *Weir* v. *Jones, supra,* which appellants appear to rely upon largely, sets a standard of good faith, to the measure of which the appellants have utterly failed to attain. Their foreclosure was not "for the collection of an indebtedness acknowledged to be just, true, correct and past due:" It was not for the collection of a debt at all, but for the purpose of defeating the collection of one, viz. : the debt owing to appellee by R. A. & A. F. Armitage, whose deed to the land in question Mrs. Ann Searles already held. Further, in the case of *Weir* v. *Jones,* the complainants had actual notice of the sale. In this case they had none. While we do not contend that actual notice is necessary in all cases, we do contend that in this case, where the junior encumbrancer did not live in the county and had no agent there ; where they did not subscribe to the only newspaper in which publication could be had ; where the foreclosure was had for the very purpose of defeating their rights, and not for the collection of a debt, that fairness and good faith require that they be advised of the sale; such fairness and good faith not having been exhibited, the sale should be set aside. Appellees offer to reimburse the amount of the first mortgage, if required, and a setting aside of the sale would not prejudice appellants; they will still be the owners of the land; will still have the right to redeem from the second mortgage, or if they are of the opinion that the land in question is not worth more than the first mortgage, they will have the right to have this fairly tested.

Further, it is well settled law that while a mortgageor may purchase the mortgaged property at a sale of the same, that he cannot acquire such title as will defeat a junior encumbrancer. 9 Ency. Pl. & Pr., 193; *Otter* v. *Vaux,* 6 Deg. M. & G., 638; Jones on Mortgages, sec. 1887 (4th ed.).

As a logical sequence to this, a party in privity with the mortgageor should not be allowed to defeat the junior encumbrancer without giving him a chance to protect himself; the sale under the senior encumbrance will be voidable as to such junior encumbrancer.

This position has received partial confirmation from the decisions of our courts in the case of tax titles; it has been repeatedly held that a mortgageor or person in privity with him cannot acquire a tax title to the prejudice of the mortgagee, nor can a mortgagee's purchase at a tax sale defeat the equity of redemption of the mortgageor; nor can a person in privity with a vendee acquire title to the prejudice of the vendor. *Brown* v. *Lyon,* 81 Miss., 438 (s.o., 33 South. Rep., 284).

The record shows that the appointment of Dabney as trustee was not placed on record until after the sale had been made. The position taken by appellants is that Dabney was not a substituted trustee within the meaning of the acts of 1896, p. 105. It is true that the statute uses the words "substituted trustee," but the courts have shown a tendency to construe this statute with regard rather to its spirit and intent, than to the strict letter of it.

CALHOON, J., delivered the opinion of the court.

This is an appeal from a decree overruling the demurrer of appellants to the bill of appellees. It appears from the bill that A. F. & R. A. Armitage executed a mortgage on the land in controversy to the estate of J. B. Guthrie to secure the payment of six certain several promissory notes falling due annually, covering a period of six years and aggregating $1,600, exclusive of

interest.   This, the oldest incumbrance shown in this record,
provided that in case of default in payment of either of the notes
the legal holder of any of them might appoint a trustee to take
possession and sell in the manner and upon the notice required
by statute for sales under execution at law.   Pending this mort-
gage, and junior to it, A. F. & R. A. Armitage, on March 20,
1903, conveyed the land to E. S. Drake, trustee, to secure appel-
lees in the payment of three promissory notes of $140 each.
Pending both these incumbrances, and junior to both, A. F. &
R. A. Armitage, on February 8, 1904, conveyed the land to
T. M. Searles, one of the appellants, as trustee, to secure the pay-
ment of promissory notes aggregating $1,000, payable to A. F. &
R. A. Armitage, and by them indorsed in blank, and they then
came to be owned and held by "T. M. Searles, or Ann M. Searles,
or both."   With matters in this condition, and on December 31,
1904, the Armitages conveyed the land in fee, by a conveyance
with special warranty, to appellant, Ann M. Searles, and she
thus became on the face of the record the owner, subject to the
three incumbrances.   This conveyance was not put on record
until twenty-one days after its execution—January 20, 1905.
On that day, January 20, 1905, T. M. Searles, as trustee in the
youngest of the trust conveyances, after proper publication, sold
the land, and Mrs. Ann M. Searles, his wife, bought through her
attorney, J. B. Dabney, and this trustee conveyed it to her and
she went into possession of it.   In February, 1905, Mrs. Searles
had negotiations for the purchase of the notes secured by the
middle incumbrance—that to E. S. Drake, trustee, to secure
appellees; but these negotiations failed because she would not
pay the amount demanded.   At some time early in the year
1905 the appellant, Thomas M. Searles, bought the notes secured
by the oldest incumbrance—the Guthrie mortgage—with the
purpose of protecting his wife's title by this claim superior to
the middle incumbrance—the one to Drake, trustee, to secure
appellees.   Then, as the holder of the Guthrie estate notes, pur-

suant to the authority of the mortgage, he appointed in writing the said J. B. Dabney as trustee to sell under this mortgage, which he did, after due advertisement in the proper newspaper in Port Gibson, and the sale was made at the door of the court-house there, and Mrs. Ann M. Searles was the purchaser, and Mr. Dabney, the appointed trustee, conveyed to her. At the date of this sale the Armitages were insolvent. His appoint-ment as trustee was not filed for record until the day of the sale, and after the sale, when he filed it with his deed to Mrs. Searles. A point is made on this. It was actually filed just ten minutes before the deed. The bill avers that appellees, Kelly, Simmons & Co., had no notice of the purchase of the Guthrie notes by Thomas M. Searles, nor of the appointment of J. B. Dabney as trustee, and that the purchase by Mrs. Searles of the Guthrie notes and the sale were solely in the interest of Mrs. Searles, and with the design to defeat the interest of appellees, and therefore fraudulent. No fact of fraud is set out. It is conceded that on the face of them all the proceedings were in exact compliance with the terms of the instruments. The foregoing is a very accurate and full presentation of the case made by the bill.

One objection is made that the appointment of J. B. Dabney as trustee under the oldest incumbrance, that of the Guthrie estate, was not filed for record until after the actual sale and therefore the sale was vitiated under the statute of 1896. Laws 1896, ch. 96, p. 105. We cannot concur in this. That statute had reference expressly to "substituted trustees." Mr. Dabney was not a substituted trustee. He was an original trustee, appointed by the holder of the unpaid notes in strict accord with the terms of the mortgage contract.

The only other objection is based on the situation at the time Mrs. Searles bought at the trustee's sale under the Guthrie estate mortgage. It is stated that under the averments of the bill she had bought at the trustee's sale under the youngest incumbrance, and had bought from the Armitages themselves all their interest,

and was in possession at the time she bought at the sale under the oldest mortgage; and it is urged that she was in such privity with the Armitages that she could not do what they could not do, and as they could not buy at that sale so as to affect the middle incumbrance, she could not. We cannot subscribe to this extension of the doctrine of privity of estate. There was such privity of estate as exists between vendor and purchaser, but no privity whatever in the relation of the Armitages to the three secured debts. Mrs. Searles did not owe the debts. She was not a mortgageor in possession. No duty of a mortgageor devolved on her. She was at arm's length with the Armitages and the claimants under the junior incumbrance. 9 Ency. Pl. & Pr., 193. Being in by purchase under the youngest incumbrance and from the Armitages, she had a perfect right to perfect her title by buying the notes of the senior mortgage, causing sale under it, and purchasing at that. She was under no obligation to give actual personal notice to the claimants under the middle incumbrance. It was their business to watch that. It was a duty to see that proper advertisement was made in the proper newspaper and a fair sale had according to the terms of the contract; and this duty being performed, it was not her fault that appellees were not subscribers to the newspapers and did not see the advertisement.

We know of no authority holding that the beneficiary in a trust deed cannot buy at the trustee's sale. The demurrer to the bill should have been and now is sustained.

*Reversed and remanded.*